We will hear argument next in No. 153160, Rover v. Office of Personnel Management. Mr. Jackman? May I begin by at least by trying to focus you on what is at least in the forefront of my mind and then you can explain either the answer or why it shouldn't be in the forefront of my mind. We issued an order that produced some letters because we were focusing on aspects of the board's opinion, OPM's submission, OPM's brief here, your brief, and came to focus, particularly after the letters, on what seems like a factual question. How much money in the relevant years, 2006, 2007, 2008, did Mr. Grover actually receive? What was he paid? And this is my current understanding of the record from everything in the record before the board. There are a couple of these documents, the individual retirement records, that are, let's call them, schizophrenic about the question. The right-hand column says he got at least $17,500 in overtime. The deduction figures arithmetically imply he didn't. What are we supposed to do about that? But most basically, you had something in the record where either you or an expert or something said, based on the pay stubs, he got the $17,500. We don't have that in the record. So what are we to make of the possible facts and the record facts? Start with the possible facts. What is the basis for your asserting he got the $17,500 in overtime in each of the three years? The answer to that, Judge, is that he actually got more than double that sometimes and nearly double that. How do we know? What's in the record? What is the proof? Is there pay stubs? I have a pay stub with me. Let me just ask this question. We called for the entire record from the MSPB, and they sent it to us in electronic form, and sometimes those records include everything, sometimes they don't. Were you representing Mr. Grover in front of the MSPB? Yes, sir. Did you introduce into evidence actual pay slips, his pay stubs? No. You made reference to the pay stubs in the form of a letter of counsel, then counsel for Mr. Jackman had written a letter saying this is how you properly compute and referring to pay stubs that had also apparently been, according to your lawyer, in front of the OPM. OPM had seen the pay stubs. That's what's in that letter. But you're telling us now that the pay stubs themselves were not in front of the board. As I think of it, Judge, there were several proceedings before the Merit Systems Protection Board, and I was not participating in the first one at which evidence was introduced, which is why I sought to help the court by including the letter from his first lawyer who made the calculations as to what it should be. Yes, the ones on which you now depend. Yes. Yes. Well, I think the question of whether or not he received the full $17,500 for his high three years could be, if it's not already in the record, and I believed it was, but I hadn't seen the record, could be submitted because my information from my client, who worked 32-plus years for the government, was that he knew full well that he had received, he had worked far more than the $17,500. That was a limit. He couldn't claim more than that. And so we never considered that to be a problem. It's not been disputed that he had $17,500 to be included in his high three. Well, in a way, I think it has been. I agree that the government has presented a number of different arguments, which I think have shifted over time, and that a principal argument, in fact, I'd say the main argument in the red brief was a legal argument, which I basically take their letter, their more recent letter to abandon, which is that they don't have to count that money even if he got it because there weren't deductions taken from it at the time. I think their principal position now is he just didn't get the money. And the reason for that is that the only document in the record is perfectly in equipoise about whether he got the money, and it was your burden to prove that he got it instead of that he didn't. The perfect equipoise is the right-hand column says he did, but the notes, not the notes, the numbers showing the deductions arithmetically show that he didn't, assuming that they took deductions from everything they were supposed to, which means what are they supposed to do? It's your burden. That's why you have burdens of proof to resolve matters that the record doesn't resolve. It's kind of impossible, Judge. If you look at page one of my brief, they changed their position eight different times in this case. Well, but they were doing a bunch of different sort of complicated arithmetic. But on the basic question, did he get the money, the record now looks like there's just these IRRs, basically joint appendix page 49, 40, 41. They all say the same thing. Right-hand column says we think he did. The actual calculations rest on the premise that he didn't. By the money, I mean at least 17.5, just so we're clear, not a trivial amount of it, but at least 17.5. And I think they agree now that if he got the 17.5, that has to be counted, but you didn't prove that he did. In the submission of May 26th, OPM wrote the one that's the letter that they responded. Oh, the recent, May 26th of this year, yeah. That's right. Which page? The second paragraph starts, We collected individual retirement records that the National Finance Center certified to OPM from Mr. Grover appear to indicate in the remarks that the statutory maximum of $17,500 of overtime pay was included in Mr. Grover's earnings for fiscal years 05 to 08. So at least that side of it tells you that, as far as I'm concerned, he did receive. They say they included. I don't think, at least in my mind, there's no lack of clarity about this. That's only half of the story. The other half is that the rest of the same document indicates he didn't. Which means if you have the burden, you haven't proved which of the two columns to simplify is correct, the higher one, and if you don't, the question is what are we to do? One possibility is that if you stand here and you say, I have seen the documents that show that he got the $17,500, maybe the board didn't actually really focus on that question. Maybe you should have another opportunity to ask them to now consider material not in the record, and they can decide whether you forfeited it by not doing it in a timely fashion. I'm not quite sure, but there doesn't any longer seem to be a dispute about the law, only a simple fact.  I think when they come back later in the same paragraph and say that, moreover, Mr. Grover's IRRs clearly indicate deductions from some amount of overtime pay is where they are reaching the conclusion that he didn't get all of it. But look, if you look at JA 49 and you look in the middle column and it shows what the deductions are and just invert the arithmetic, he didn't get that that does not include the $17,500. Yes, I agree with you, Judge. The question that I'm putting to the court is they have no right to change the meaning of the statute. The statute doesn't give them a right to calculate retirement earnings by how much deductions were taken. That's a separate point. Yes. You, I think, need, for purposes of arguing to us, to assume that you lost that argument. I mean, if you have an argument in your brief about methodology to say their method of arriving at a three-year number by using the amount deducted and then reverse mathematics to get them an actual pay, you're saying that's illegal. Yes. Right. So I'm saying if you're right on that, you win. Right. So just assume, for purposes of argument, you lose on that. That the panels, the court says OPM is entitled to pass a regulation and pursuant to the regulation, they use the deduction mathematic computation method and we think that's just fine. You need to assume, for purposes of this argument, that you lost that issue. Okay. Not, I'm just telling you, but assume that. So you started by almost referring to something, saying you had a piece of paper here that wasn't a record, but it was a tape, pay stub or something like that? Yes, I do have one. With a note on it from a client saying, as you can see, there's no way to tell if overtime was taxed or not. But since it is added to my basic pay amount with deductions listed below $1,423, I would think all earnings have been taxed. He gave me this because the pay stub is not something that one can make much out of. Unless one's looking for a service comp date, which is obvious, or the pay and grade level of the individual, which you'll find. But whether deductions are taken from overtime, they don't break it out. They just list it. The employee has no way of knowing until he reaches... Can you compute that the amount he was paid exceeds his base salary and thereby does include overtime pay? And exceeds it by more than the very small amount of overtime pay that the individual retirement record indicates he did get. Overtime is shown here. Is it? Yes, you can tell the overtime at double rate. Does it give a number, a dollar number for the overtime? It does here give the number of hours for this pay period, 6.75 hours. It gives the number for the year to date at 37 hours, 38 hours, I'm sorry. The overtime pay for this pay period being $500, 517.05 to be exact. Overtime pay year to date, and they're listing this as the fourth pay period. So in the end of the fourth pay period... He's already had $2,500 in overtime pay. Oh yes, he has. $2,897 in overtime pay. And it's the fourth pay period of the year? Yes. Do you have any reason to believe that the document that you have, would there be other documents for other pay periods? There should have, there could have been. Let me not put a burden on a lawyer who's not here. I thought that it was in the record. I never saw the whole record because at one point some 1,500 pages were submitted to the court. That was as a result of your discovery request? Yes. That was given to you, but at least... Well, not to me. I meant your client. Given to our side, yes. Yes, you collectively. But as far as I can tell from the 500 page record that we got from the MSPB, that's just not in there. Let me ask one question going to that. You mentioned that we do know that there were more than one proceeding at the MSPB. Were they all under the same docket number? Do you happen to know whether the earlier proceedings at which time other documents may have been submitted to the MSPB would be under a different docket number at the MSPB? You may not know. We can check that ourselves. But, I mean, it's a possibility that perhaps the pay stubs were inverted to in the opinion of the MSPB. I'm looking to see what had happened. During an appeal of the previous case, OPM rescinded his final decision and the case was dismissed. OPM petitioner was forced to file yet another appeal on March 22, 2011. So I think it was separate. I believe I represented him in the second one and the previous lawyer represented him in the first. And it may be that the board only submitted to this court the 500 pages that were in the second submission, in the second case, but not the first one. Okay. Well, you have gone into your rebuttal time. Why don't we hear from the government and we'll restore your rebuttal time. Thank you. Can I start with a question that I thought the answer was clear under your letter? You agree now that if he received, in fact received, put aside problems of proof at this, but if he, in fact, received more than the 17-5 in overtime, but deductions were not taken from that, though they should have been, so they were mistakenly not taken, that the 17-5 has to be included in the HIE-3 calculation for the annuity. Yes, that's correct, Your Honor. However, what we would submit is that OPM has interpreted its own regulations to bind it to the figure on the IRR. So, in other words, that would have to be demonstrated on a certified record from the employing agency, in this case, Customs and Border Protection. So it wouldn't be sufficient even at the board level had Mr. Grover demonstrated through pay stubs, W-2s, or what have you. For example, in this court examined a case of Thomas versus OPM. So even if Mr. Grover had come forward at the MSPB with paycheck stubs certified by the Customs, that's the amount that was paid, and it showed more than 17-5 in overtime in each of the three years, and he presented that evidence to the board, you would say the board, as a matter of law, would then have required to reject his claim. That's correct, Your Honor, assuming, as we have here, that we have a certified record. Correct, because as a matter of law, the only possible way to compute this is through the deductions, and the only proof of the deductions is on the document that the agency creates. That's what you're saying, right? No, Your Honor, not through the deductions. That limitation is not what we're saying. However, they are limited to the certified IRRs or certified IRRs. Well, a certified IRR, in this case, shows deductions. Yes, Your Honor. It doesn't show total pay. That's correct, Your Honor. And you reason from the deductions to the total pay. That's correct, and that's a long-standing practice that OPM has employed, not only for COPA overtime, but for other irregular pay that varies from pay period to pay period. I understand what you're saying about their methodology, but you're saying, as a matter of law, a judge, an administrative judge at the MSPB would be barred from ruling in favor of Mr. Grover when he proves, beyond peradventure of doubt, that he receives $17,500 each year, simply because the document that OPM created doesn't credit him with that. Well, OPM did not create the document, Your Honor. Well, the document, OPM, relies on the document that was created where it was created. That's correct, Your Honor, and that's what the board has consistently held, and this court has consistently, although in non-presidential cases. Well, the AJ, Appendix 22, in making the decision that the IRRs are fine, says, quote, the appellant has produced no evidence from his employing agency or elsewhere that the IRR is inaccurate or incomplete. It sounds like the implication there is that the AJ would be open to receiving something, perhaps pay stubs, indicating that what's on the IRR is inaccurate or incomplete. I don't think it's here. It seems like the administrative judge is open to doing what I think it's supposed to be doing, which is a fact inquiry on whether or not this individual, in fact, received the pay that he's contending he did. Well, perhaps, Your Honor, we should leave aside the situation, then, of what would have happened if Mr. Grover had submitted pay stubs and focus on the situation that we have here, which, as the court has noted, Mr. Grover did not submit pay stubs that appear in the record anyway. Are you familiar with the record of the earlier proceedings? I received, most likely, the same record that the court received. Can you assert to us that there's only one docket number for all these proceedings over the years? In fact, Your Honor, I looked after hearing your question, and it appears there was more than one docket number,  Are you certain that in the earlier docket numbers we would not find pay stubs? I'm not certain, Your Honor. What happens if we found them earlier? Well, again, Your Honor, the MSPB, as well as OPM, as well as this court, have consistently held that there's no jurisdiction, based on OPM's own interpretation of its regulation, 5 CFR 831.103, that they are bound to what's in the IRR. So, in other words, it's not that this cannot be fixed, Your Honor. It's that it must be fixed through the employee... Right, but as you said earlier, we don't have that question in front of us. That's correct, Your Honor, to my knowledge. Now, if there was before the board at some point, it's certainly clear that it wasn't before the board in the... There's no circuit ruling on that process, right? It's a board procedure. The board says it's bound by the IRR. No, in fact, there are, well, non-presidential, but in Thomas v. Office of Personnel Management, there are two other cases with the same result, but the Thomas case has the most similar facts to here. In that case, Mrs. Thomas was receiving an annuity for 15 years that she raised no complaint with, and then after 15 years said, wait a second, I looked at this, and my W-2s, my pay stubs, and all these other documents indicate that I actually got more. She brought that to the MSPB, produced the pay stubs, produced her W-2s, produced emails from the employing agency that said, yes, you're right, you got more than this IRR indicated. The board still said OPM has interpreted its regulation and found that it's bound by the IRR. The IRR says otherwise, and we can't touch that. This court said OPM has interpreted its own regulation in that way. It doesn't say that, but it's consistent with the regulation. Therefore, OPM's interpretation is entitled to our deference, and we're not going to overturn that, even though it's clear in that case. Can I ask, did any of those cases involve IRRs that it seems to me, like the one here, that it seems to me are perfectly Janice-faced about what the truth is? It doesn't appear that that's the case, Your Honor, and that's one distinction where there is some conflicting evidence here. However, it appears not only that the most convincing evidence is the deduction amounts, and not only that, but OPM has a long-standing practice, as we've stated in our letter, of using the deduction amounts that's perfectly consistent with statute and regulation, and that it's entitled to deference. Using those procedures, in addition to the fact that those are listed in a part of the IRR that's clearer than some notes in a remarks column that don't even have explicit reference. Could you give us a plausible explanation of why the remarks section says what it says? It could be a variety. I wouldn't want to speculate, Your Honor. It could be listing the statutory maximum. The only plausible explanation I can think of is because he got that money. Again, in theory, it could be because it's listing the statutory maximum. It could be referring to something else entirely. In fact, the only reference to COPRA pay is on a different page of the IRR at the very bottom where it states COPRA APS with an asterisk, which the typical it would appear based on the handbook that OPM puts out should be noted every time there's a reference to COPRA pay. It wasn't done here, but at any rate, OPM did what it always does, and it does consistently, not for this one individual, but for every similarly situated individual, in calculating through the deductions, because the deductions are statutorily required to be taken, calculating through the deductions what the pay actually was. And it is also statutorily required to give credit for up to 17.5 of overtime in the I3 calculation. If it's received, Your Honor, that's correct. And so in this great country we live in, the person who decides whether he received it or not is the payor, not the payee. That's correct, Your Honor, but not OPM. So they can just whine. It's great. They don't ever have to give them full credit. Why would the agency ever give them full credit for the 17.5 when they can't ever be caught on your theory? Well, I can't answer that, Your Honor, but I would imagine they have a statutory responsibility to report. Does that sound like the right rule of law to you? Well, certainly not, Your Honor. The statute says you're required to give credit for the full 17.5 if you received it, and the employee can prove in any court of law anywhere that he did receive 17.5, but he doesn't get credit for it. Well, what this court has held is that if the agency – so, again, the proper resources to the employee agency, the Customs and Border Protection. This court has even held in the Raynon case that there would be a cause of action under the Privacy Act, 5 U.S.C. section 552A, for Mr. Grover to have taken the employing agency to district court if they refused to change the information based on what he had. So he could have gotten them to correct the records in that venue, but not through OPM, not through the MSPB process, and not through this court to the extent that he's saying what's on my IRRs is incorrect. I know you've cited a non-precedential opinion, but, I mean, can you explain why the bureaucracy walls will come crumbling down if, you know, if they were allowed to prove that through pay stubs in front of an administrative judge at the MSPB that, in fact, they did receive the overtime? How does everything go haywire? Well, it's not that Mr. Grover or any similarly situated individual would be left without recourse. It's just that their recourse is not through that procedure, but through the employing agency. No, but I'm just trying to understand what would be wrong if that was the procedure. Well, it would violate the way that OPM has interpreted its own regulation, which is to say we are bound by the SF-2806, which under our regulation, 5 CFR 831.103A, is the record on which we base this. Is there any kind of, I'm going to call it a statute of limitations issue with his now going back and getting this record fixed, or is, I mean, can he do that now without having lost rights? Yes, Your Honor. My understanding is he can, in fact, still have, if the, now I can't speak to the Customs and Border Protection individual what their response would be, but OPM would not reject a new certified IRR from Customs and Border Protection if they received such an IRR that contained certified information reflecting that the pay was received. Whether or not retirement deductions were taken, they would, in fact, change the annuity retroactively as well. Retroactively to, what is it, the 2008 retirement date? That's correct, Your Honor. Now, in terms of statute of limitations, I will note that I mentioned that the district court proceedings, that there may be a statute of limitations issue there with doing that at this point, but that would have been the recourse at the time, but that's all assuming that Customs and Border Protection refuses to change the IRR. In fact, they've already changed it once. The record does reflect that OPM has changed the calculation several times. NFC has changed the certified information. Actually, you're right, Your Honor, more than once, because the initial IRRs were deficient in that they did not have the two different rates of deductions listed. They corrected that issue, and then after the issue was raised at the MSPB by Mr. Grover, NFC certified new retirement deductions information, which were factually different from the previously certified deductions, and it's on those deductions which appear in the record that OPM bases its current calculation. So when I look at the board decision and the administrative judge's decision, what I take away from those is that the board didn't actually make a finding that on this record he did not receive the 17-5. Instead, and the A.J. more or less made a contrary finding, not clear, but it points in that direction, and the reason for the rejection of the claim was not that they thought that the record did not establish this amount, but rather that OPM was just simply flat-out entitled to rely on inverting the deductions. Whether or not the deductions were correct. I think that's correct, Your Honor, and that's consistent with the board's precedent and that was upheld in this court in the non-presidential cases that I cited. They basically didn't seem to, as you state, Your Honor, really engage with what the actual fact was. They applied the rule that they've consistently applied, which is that OPM is entitled to rely on that IRR, and whatever's on that IRR, basically whether it's right or not, that's what OPM is bound to. The problem, of course, is that whatever is on the IRR is deeply ambiguous in this case. It is to some extent ambiguous to the extent that the remarks can be read to indicate that there was a greater amount of COPRA overtime pay paid to Mr. Grover than that that's reflected in the retirement deductions, but the retirement deductions not only are the more convincing and more concrete piece of evidence, but consistent with OPM's long-standing practice, and the reason for that is to make sure that they capture all of the pay that's in irregular pay situations that vary from pay period to pay period. To make sure that they capture that, they do it with reference to the deductions, which are statutorily required to be taken. Moreover, it's important to note that the deductions were taken for some amount of COPRA overtime pay, and the reason that's important is it shows that Customs and Border Protection didn't just forget. How do we know that? We know that from your arithmetic showing that his high three is bigger than just his salary. That's correct. But he could have won prizes for good service and all those other things, because your level of bump-up isn't very great. Well, it's fairly great in the sense that— How do you know? You just said, how do you know that he was getting credit for some overtime in the high three? Well, it's for the reasons that you state, Your Honor, and the difference was— But that's not proof, because other sums of money could have been included in the salary to get that number above base salary. Potentially. There's no indication of that in the record. Yeah, but there's no indication in the record that he got any extra money in overtime. Correct, Your Honor. The difference I would only also add is that the difference is a little larger than what's represented in our letter. I did that that way to be conservative, but that's the minimum difference for even the final year at which, of course— But your letter wasn't accurate. No, it was not inaccurate. Why don't you give us the real number? Well, that number is accurate for the last year. So it's the amount that the average pay was calculated at as compared to the highest rate he ever made. So it's a minimum of that, but he made, of course, lower rates in the previous years before the last year of the high three. But the disparity—I mean, if you invert those deduction calculations, you get a number that is reasonably close to the base pay, not reasonably close to the base pay plus $17,500. It's quite far toward that end of the spectrum. It's closer to the base pay than to the combination of the two, yes, Your Honor. In this system of government you describe where OPM says we're irrevocably bound by whatever's in the IRR, even though it can lead to the problems that we have in this case. That process hasn't been looked at since August of 1996, correct? I'm not sure I follow where that— Aren't your OPM regs the last updated in August of 1996? Yes, Your Honor. However, that— Nobody in a position of responsibility has heard talk of the kind of thing we're hearing today, at least since August. Nobody looked at this since 1996. Well, the board has— For possibly realizing that maybe there ought to be changes. The board has looked at it consistently since that date. This court has looked at it on a number of— The creator of the system. OPM has presumably—I don't have independent knowledge of this, Your Honor, but presumably has looked at their regulations continuously as part of their duty under our system of government to continually take note of what their regulations are. I'm not aware of any efforts or public notices put out of proposed changes or anything of that nature. Leave them over my time. Thank you, Mr. Chauvin. I'd like the court to focus for just a minute on the deduction issue because if for some reason this case were set back to the MSPB, the question of the deduction issue in order to determine the amount of pay really needs to be decided before that, I think, because without the deduction issue being decided, we could be right back here with the same question about whether 17-5 should be included. I feel that if I were trying to decide this myself, I'd read the statute. I don't think I need to repeat it. It's on page two of my brief. You determine retirement annuity based on the average pay in effect at the time so that the grade and pay level of our client, if it was on a list, could easily be compared with the public information as to what the pay for each grade and pay level is. The rest is strictly mathematics, but the important question is the statute doesn't say anything about calculating the annuity based on deductions. Just for purposes of argument, again, assume you lose that argument and that we write an opinion in which we say the methodology of making this computation by using deductions and reverse mathematics is okay. What's your view about what we should do with the case having made that conclusion? The record as it stands doesn't include the pay slips. The record as it stands, unless we find something in one of the previous appeals or a different number of the pay stones, the record does not answer the question that the presiding judge put immediately, which is to say where's the proof of receipt of overtime up to the 17th. What should we do? Do you think you're entitled to a remand? Do you think you're entitled to us vacating the decision and sending it back to give you an opportunity to bring that evidence forward? I think if the decision of this court is that the calculation by way of using deductions is proper under the statute, I'm not sure there's a lot to be gained by a remand. We're talking about one and a half percent of certain numbers, and if the calculation itself is allowed, I don't think there's enough. I'm sorry, if the deductions are allowed. I guess it seems to me that there isn't a kind of a single unitary question, may OPM use a deduction inversion method. Really? It could be yes, it may, unless there's evidence that the starting point for the deduction number is incorrect. Okay. It seems to me your entire case depends on the assertion that, in fact, the starting point for the deduction inversion number calculation is incorrect. Look at the right-hand column of all of those IRRs. And then the question is, do you have in the record, in the earlier docket number record, payroll information that shows the right-hand column is the correct one, in which case there's nothing in their regulations that say you must use a deduction inversion calculation that starts with an incorrect deduction number. And there's also the possibility that because the board and AJA weren't really focused on the question, how much money did you actually get, that maybe the board would find it within its discretion to give you an opportunity to supplement the record. But you could argue about that. I would do that. I could handle that if that's what you would decide. Thank you all very much. Thank you. Do you understand why we wanted you to come down for oral arguments? I sure do, Judge. Thank you. Thank you. Thanks to both parties.